Hooker, J.:
Consideration of this appeal requires the construction of the 5th paragraph of the will of the deceased. He died on the 24th day of November, 1901, a Eter having been a member of the firm of Marx & Kawolle for upwards of thirty-one years. On May 19,1900, Marx & Kawolle entered into an agreement to continue their copartnership for a further term of five years, and by that agreement an elaborate scheme was provided whereby the partnership should not cease upon the death of either or both partners during that five-year period, but should be continued in the event of the death of one partner by his executors or personal representatives, and might be so continued in the case of the death of both partners, in the discretion of the executors of both. By his will, the executors of Marx were given full power to continue the business, and were, by *892 the 2d paragraph of tlie will, specifically directed to carry out the provisions of the partnership agreement, so far as the same might be legally done.. .
After making, certain bequests of household property and personal belongings in the 4th paragraph of his will, the testator provided in the 5th paragraph thereof as follows: “ Subject to the provisions relative to my copartnership business of Marx & Rawolle, I direct my executors hereinabove named, or such of them as shall qualify, to sell all the rest, residue and remainder of my estate, both real and .personal, at public or private sale, on such terms as they shall deqm best, and I hereby give them full power to'.grant and convey the same and to receive the proceeds thereof' and also the proceeds of my said copartnership, business when wound up. and the net income thereof, and I.give and'.bequeath the same as follows : ” (1), to his wife, the appellant, one-tliird absolutely; (2) to his executors in trust, oné-third, whose net income during her life should be paid’ to his wife, the remainder. to go to certain of the relatives of the wife and the testator^ and (3) the remaining one-third to go to certain of the testator’s'relatives. There was no' residuum of the testator’s estate, except the copartnership business of.Marx &. Rawolle. The executors.kept the estate invested.in that copartnership business- until July 5, 1905, when it Was sold, and brought $283,809.55. From the time of the testator’s death to the date of the sale, the net profit of the investment Of the testator. in the copartnership business amounted to $125,639.39. This latter amount, .the executrix received from the .firm in. jnstallmentS from time,to time, and as she received these moneys they were distributed among the various beneficiaries named in the will and its codicil, in accordance with what she supposed to be tlieir .provisions that is, o’f this net income she took for hersélf one-third absolutely; she took a. second third as the life interest in a third.of the testator’s residuary estáte,, and the .balance she divided'among those of the. testator’s relatives who. were mentioned in subdivision (o) of the 5th paragraph' of the will and the codicil thereto. . .
. The respondents: maintain-that becaiise she has divided the income of the business in thirds, and distributed it as though it weredncopié of the principal of the estate, the executrix -lias erred in her construction of the will." The provisions of the 5th. paragraph. aré *893 not ambiguous and do not lack in clearness. The language is so plain that recourse should not be had to circumstances or collateral matters to determine the purpose of the testator. His intention is clearly defined in that paragraph. Divested of the phrases .and clauses unnecessary to be read in construing the subject-matter, it provides a direction to his executors to sell his residuary estate, subject to the provision in carrying on the partnership business, and they are given power to grant and convey the same and to receive the proceeds thereof, and to receive the proceeds of the partnership business when wound up, a/nd the net income thereof; that is, they are given power to receive the proceeds of the net income of the partnership business; and he gives and bequeaths as thereinafter provided, the same, that is, of course, the proceeds <?f the residuum, the proceeds of the copartnership business and the net income. This last item he directed should be distributed in the manner thereafter provided, which was the "same method provided to govern the distribution of the proceeds of the partnership. It seems clear, therefore, that the net income from the partnership business was to be treated as part of the principal fund of the decedent’s estate, and it was to be divided along with and in the same manner as the residuum and the proceeds of the partnership business. This construction would give to the widow (1) an absolute third in all- three funds, and (2) the income during her life of the residuum, the proceeds of the estate when wound up and the net income thereof, that is, she is entitled to the income of a third of the net income of the copartnership business.
Such is, in our opinion, the true construction of the will, for the meaning of the 5 th paragraph is plain and unambiguous, and the infants should receive that portion of the estate to which they are entitled under this construction. The legatees who were infants at the time of the testator’s death and who have attained their majority since then, may or may not have ratified a practical construction theretotore placed upon the will contrary to the view we adopt of the testator’s intent; as to that the record is silent.- But as to the adults they seem now to have been estopped from asserting that the construction placed for the past five years upon this will by the 'executrix and by themselves is the true one. So far as the record shows a substantial portion of the estate has been actually distrib *894 uted and received by most, if not all, of the adult legatees prior to the filing of .the final account and in conformity with the construction given to .the- will by the executors. They- are, therefore, estopped from asserting a different basis of distribution. (Chipman v. Montgomery, 63 N. Y. 221, 234, 235.)
The executrix has paid a tax of $633.54 to the Federal government, whicli it now seems was not a proper charge against the estate It seems to be admitted by counsel for both sides of thig controversy that the sum paid may be recovered back under the law as interpreted in Tilghman v. Eidman, (131 Fed. Rep. 651). While We might consider the direction of the learned surrogate that this amount be surcharged equivalent to a direction that the executrix should seek to recover this amount .back and that such course should be pursued, we are of opinion that the surrogate erred in charging this amount personally against the executrix.
The decree of. 'the surrogate should, .therefore, be reversed and the proceeding remanded to the Surrogate’s Court for further con-sideration in accordance with the views here expressed,, with one bill of costs payable out of .the estate ...to the appellant and ope bill to the respondents.
Hirsohberg, P. J., and Rich, J., concurred; Miller, J., read for modification, with whom Jerks, J., concurred.